UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RODNEY M.,

             Plaintiff,

      v.                                      **DECISION AND ORDER**

                                              21-CV-321S

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

_____

      1.      Plaintiff Rodney M.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed his application with the Social Security Administration on September 4, 2019.  Plaintiff alleged disability beginning September 4, 2018, due to congestive heart failure; coronary artery disease; status-post myocardial infarction ("MI") with cardio stenting; chronic obstructive pulmonary disease ("COPD"); degenerative disc disease of thoracic spine; unspecified trauma-related disorder; recurrent moderate major depressive disorder ("MDD"); and bipolar disorder.  Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3.      On July 28, 2020, ALJ Vincent Cascio held a telephonic hearing due to COVID-19 at which Plaintiff—represented by counsel—and Vocational Expert Ruth Baruch appeared and testified.  (R.[2] at 15, 32-60.)  At the time of the hearing, Plaintiff was 47 years old when he applied, had a high school education, but no past relevant work experience (R. at 26, 25, 15).

4.      The ALJ considered the case *de novo* and, on September 25, 2020, issued a written decision denying Plaintiff's application for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 8, 9.)  Plaintiff filed a response on March 4, 2022 (Docket No. 10), declaring that a further reply was unnecessary (id. at 1), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion (Docket No. 8) is granted, and Defendant's Motion (Docket No. 9) is denied.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

---

[2]Citations to the underlying administrative record are designated as "R."  This record is contained in two docketed items, Docket Nos. 6, 7.

[3]The ALJ's September 25, 2020, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119

(1987).

      9.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not,
> the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities.  If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age,
> education, and work experience;  the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work.  Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

      10.    Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra,

482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step

is divided into two parts.  First, the Commissioner must assess the claimant's job

qualifications by considering his physical ability, age, education, and work experience.

Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since application date of September 4, 2019.  (R. at 17.)  At Step Two, the ALJ found that Plaintiff has the following severe impairments:  congestive heart failure; coronary artery disease; status-post MI with cardio stenting; COPD; degenerative disc disease of thoracic spine; unspecified trauma-related disorder; recurrent MDD; and bipolar disorder.  Id.  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 18.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except Plaintiff can occasionally climb stairs and ramps; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, crouch, crawl, and kneel; can have no exposure to unprotected heights or hazardous machinery; must avoid exposure to respiratory irritants, such as fumes, odors, dust, gases, and poorly-ventilated areas; and can understand, remember, and carry out simple, routine, repetitive work-related tasks, with occasional contact with the public.  (R. at 20.)

13.     At Step Four, the ALJ found Plaintiff had no past relevant work.  (R. at 25.)  At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 26.)  The ALJ posed hypotheticals to the Vocational Expert of a claimant with similar age, education, and work experience to Plaintiff and the expert opined that the hypothetical claimant could work as a document

preparer, eyeglass polisher, and surveillance system monitor, all sedentary work (R. at 26).  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 27.)

14.     Under the Social Security standards applicable for Title XVI applications after March 2017 for evaluating medical evidence, the agency considers the persuasiveness of a medical opinion, 20 C.F.R. § 416.920c(a).  The agency considers the supportability and consistency of the opinions as the most important factors, id. § 416.920c(c)(1), (2), (b)(2).   The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion, Melissa F. v. Comm'r, No. 20CV1363, 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (Carter, Mag. J.) (citing, e.g., 20 C.F.R. § 416.920c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive the opinion will be, 20 C.F.R. § 416.920c(c)(2).   The ALJ, however, is not required to articulate how each medical opinion is considered, 20 C.F.R. § 416.920c(b)(1).

15.     Plaintiff argues that the RFC determination is not supported by substantial evidence because (a) the ALJ erred in accounting for Plaintiff's social interaction limitations; (b) the ALJ failed to develop the record by not obtaining medical records from treating source, Great Lakes Cardiology; (c) Plaintiff's subjective complaints were not properly considered; and (d) the ALJ described Plaintiff's daily activities vaguely to support greater functionality than Plaintiff possessed (Docket No. 8, Pl. Memo.).  For the reasons that follow, Plaintiff's first argument is accepted.

16.     First, Plaintiff complains that the ALJ did not account for Plaintiff's greater social interaction limitations (Docket No. 8, Pl. Memo. at 1, 10-15).  He claims that the ALJ rendered a lay opinion in finding that Plaintiff had limitation in interaction with the

public but not with coworkers or supervisors, making that finding with no evidence in the record (id. at 11, 12, 13), see Smith v. Colvin, No. 16CV295, 2017 WL 489701, at *3 (W.D.N.Y. Feb. 7, 2017) (Telesca, J.).  Plaintiff distinguishes interaction with the public from interaction with colleagues or management (id. at 11).  He testified that he did not have friends and could not be around others or be in a large crowd (R. at 47, 49; Docket No. 8, Pl. Memo. at 12).  Social gathering with negative people upset Plaintiff's anxiety and Plaintiff did not handle stress well (R. at 232, 233; Docket No. 8, Pl. Memo. at 12).

17.    Defendant responds generally that the ALJ properly assessed Plaintiff's mental RFC (Docket No. 9, Def. Memo. at 10-15).  Defendant argues that a finding of moderate limitation is not necessarily a finding of disability (id. at 11).   Defendant distinguished Smith, supra, 2017 WL 489701, at *3, arguing that the ALJ here correctly found that Plaintiff had moderate limitation in interacting with others by limiting him to occasional interaction (id. at 12; R. at 20).  Citing the record, Defendant argues that there was evidence of normal interaction that establish Plaintiff was not limited in conducting social interaction (Docket No. 9, Def. Memo. at 13, citing e.g., R. at 959, 974, 232, 242 (function reports from Plaintiff)).

18.    Defendant next points out that two of the occupations identified by the Vocational Expert, eyeglass polisher and document preparer) require little interaction with the public and could be performed by Plaintiff with his claimed social limitations, rendering his objection meritless (Docket No. 9, Def. Memo. at 13).  Defendant, however, has not commented on the third job, surveillance system monitor, and the degree of social interaction required for that position, cf. Dictionary of Occupational Titles § 379.367-010, Surveillance-System Monitor (job requires ability to "speak before an audience with poise,

voice control, and confidence, using correct English and a well-modulated voice" and significant speaking and signaling skills).

19.     As Judge Telesca noted, "a limitation in interaction with the public is not equivalent to a limitation interacting with coworkers or supervisors," Smith, supra, 2017 WL 489701, at *3 (citing cases).  In Smith, Judge Telesca found that the ALJ there understood the distinction between the public, coworkers, and supervisors by the hypotheticals posed to the vocational expert that asked if the hypothetical claimant could respond appropriately to criticism from supervisors and getting along with coworkers, id.

20.     The ALJ here, however, posed a hypothetical of a claimant able to have occasional contact with the public (R. at 57) without discussing the claimant's ability to interact with colleagues or supervisors.  Unlike Smith, there is no showing that the ALJ distinguished the public from coworkers or supervisors to conclude that Plaintiff can interact with one group of people but not the other.

21.     The ALJ found that Plaintiff had moderate limitation in interacting with others (R. at 19, 25) but, as argued by Plaintiff (Docket No. 8, Pl. Memo. at 12) there is no evidence distinguishing interaction with the public and with coworkers and supervisors. While Defendant argues that the ALJ "suitably translated Plaintiff's moderate limitation in interacting with others by limiting to only occasional interaction with the public" (Docket No. 9, Def. Memo. at 12, citing R. at 20), there is no evidentiary basis for that translation. Plaintiff had no past relevant work, hence no record how he interacts in the workspace.

22.     Therefore, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) on this ground is granted.

23.     On Plaintiff's records from Great Lakes Cardiology, he was treated by that office from October 1, 2019, through March 12, 2020, for his second heart procedure but records for those examinations and treatment are not in this record.   Plaintiff now complains that the ALJ failed to develop the record for that heart procedure by not obtaining records from Great Lakes Cardiology.  (Docket No. 8, Pl. Memo. at 1, 16-18.)

24.     Defendant responds that the ALJ properly developed the record (Docket No. 9, Def. Memo. at 16).  Plaintiff has not proffered the medical records from his second heart procedure although the ALJ held open the record (id. at 16, 17; R. at 15 (Plaintiff submitted post-hearing record, R. at 1131-33), 38).   He also did not submit updated records to the Appeals Council (Docket No. 9, Def. Memo. at 17, citing 20 C.F.R. § 404.970(b)) or to this Court (id., citing 42 U.S.C. § 405(g)).  Defendant concludes that the ALJ satisfied the duty to develop the record by holding it open (id. at 16, citing Melton v. Colvin, No. 13CV6188, 2014 WL 1686827, at *8 (W.D.N.Y. Apr. 29, 2014) (Telesca, J.) (citing cases)).

25.     A disability benefits hearing is a non-adversarial proceeding, hence the ALJ has an affirmative obligation to develop the administrative record, Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); Harris o/b/o N.L.K. v. Berryhill, 293 F. Supp. 3d 368, 369 (W.D.N.Y. 2018) (Larimer, J.).   "This includes the duty 'to investigate and develop the facts and develop the arguments both for and against the granting of benefits,'" Harris o/b/o N.L.K., supra, 293 F. Supp. 3d at 369 (quoting Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004)).  That duty persists even where Plaintiff has counsel, id. (citing Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009)), and is "particularly pressing" where the records

sought are central to the case, id. (citing Carr v. Comm'r, No. 16 Civ. 5877, 2017 WL 1957044, at *10 (S.D.N.Y. May 11, 2017)).

26.    In Melton, claimant sought an adjournment of the administrative hearing and that ALJ granted a 7-day extension, 2014 WL 1686827, at *8.  Claimant counsel then admitted at the hearing that the record was complete, id.  Judge Telesca then held that the ALJ "satisfied her duty to develop the record by holding the record open after the hearing and subsequently granting Plaintiff's request for an additional 7-day extension," id.  In the cases cited to support that finding of satisfying the duty, those claimants said they would supplement their respective records, id. (citing, e.g., Colon v. Apfel, 98 Civ. 4732(HB), 2000 WL 282898, at *5 (S.D.N.Y. Mar. 15, 2000) (ALJ under no further obligation to develop the record once counsel indicated that he would try to provide additional pertinent information and the ALJ held the record open)).

27.    Here, Plaintiff's counsel sought two weeks to submit two outstanding treating source statements (R. at 38), submitting correspondence from Addiction and Recovery Services (R. at 1131) but not from Great Lakes Cardiology.  Plaintiff did not state that he would supplement with Great Lakes Cardiology records or state the sources he intended to supplement.  The ALJ kept the record open and instructed Plaintiff to "let us know that you were unsuccessful though and they'll be nothing else forthcoming," (R. at 38).

28.    Great Lakes Cardiology reported on October 1, 2019, following Plaintiff's second procedure was not cleared for work (R. at 938; Docket No. 8, Pl. Memo. at 17). Plaintiff points to the gap in the record of subsequent clearance to work and any office

visits or records from October 2019 to March 12, 2020 (Docket No. 8, Pl. Memo. at 17; see R. 1087-88, 1111).

29.     Plaintiff now describes the evidentiary gap but not his efforts to fill that gap or seeking the ALJ's assistance in obtaining these records or state his problems in producing these records.

30.     The ALJ held the record open but was not aware that Plaintiff needed time (or assistance) in obtaining records from Great Lakes Cardiology.  While such records are important for Plaintiff's post myocardial infarction and COPD, Plaintiff needs either to produce the records that were not presented to the ALJ or request assistance to obtain records from Great Lakes Cardiology.

31.     With remand on other grounds, the ALJ may grant Plaintiff leave to supplement the records from Great Lakes Cardiology or seek assistance to obtain records from that treating source during the gap period.

32.     Plaintiff next objects to the ALJ diminishing the limiting effects of his heart condition and his need for frequent breaks, with the ALJ relying upon vague statement of Plaintiff's daily activities (Docket No. 8, Pl. Memo. at 18-20).  He complains of episodes of chest pain and dyspnea (id. at 19).  Plaintiff also opposes the ALJ's findings on his daily activities were inconsistent with allegations of total disability (id.; R. at 21, 47, 238). Plaintiff also lacks a work history due to his medical condition and history of incarceration (Docket No. 8, Pl. Memo. at 19-20).

33.     Defendant counters that the ALJ appropriately considered Plaintiff's subjective complaints (Docket No. 9, Def. Memo. at 18-20).  Defendant notes that Plaintiff stated that he cooked, cleaned, did laundry, shopped, and cared for his personal needs,

managed his finances, interacted regularly with friends and his girlfriend, cared for his dog, and Plaintiff remembered to take his medication (id. at 19, citing R. at 21, 1016 (Dr. Janine Ippolito psychiatric evaluation mode of living findings), 1019 (Dr. Russell Lee internal medical examination report of activities of daily living), 48, 228, 230-31 235, 237, 239).

34.     Plaintiff faults the ALJ's daily activities findings by not stating how frequently he engaged in the enumerated tasks (Docket No. 8, Pl. Memo. at 19).  The ALJ relied upon Plaintiff's Function Report (R. at 235) and his self-disclosure of his daily activities and his testimony.   Plaintiff now argues that he did not state the frequency of these activities (Docket No. 8, Pl. Memo. at 19).  For example, he now contends that his dog is a Chihuahua which requires little maintenance (Docket No. 8, Pl. Memo. at 19) but does not state in the record where the breed or level of care for the dog was disclosed to the ALJ.  Plaintiff reported that he cared for his dog (R. at 235, 236, 239) but someone else cared for the dog when Plaintiff was hospitalized (R. at 236).

35.     Plaintiff has the burden of providing evidence of his disability, 20 C.F.R. § 416.912(a)(1), (2); see Yuckert, supra, 482 U.S. at 146 n.5, such as the frequency he engaged in daily activities or his inability to perform these activities.   He stated in the Function Report that he did not need help in performing house and yard work (R. at 237) despite the frequency of performance (cf. R. at 238, denying performing yard work due to his heart condition).

36.     Dr. Lee in his internal medicine examination noted that Plaintiff reported cleaning twice a week, doing laundry once a week, shopping once a month, and dressing himself daily (R. at 1019).   Dr. Lee then stated that Plaintiff "is limited from activities

requiring mild or greater exertion" (R. at 1021).  Thus, the ALJ had in the record the frequency Plaintiff performed some daily activities.

37.    Plaintiff has not established that the ALJ erred in considering his daily activities or factoring his subjective complaints in formulating his RFC and his disability. Thus, this ground for Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        January 23, 2023
              Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge